UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA
                Plaintiff,

-v-                                  **DEFENDANT'S SENTENCING**
                                       **MEMORANDUM**

MICHAEL A. TALAMANCO,          Case No. 19 CR 38
                Defendant,

---

     Now comes the defendant Michael A. Talamanco, by his attorney Shane Laughton Brabazon, who hereby requests the Court impose a sentence of 12 months imprisonment followed by 48 months of Supervised Release.

     The Defendant pled guilty to County One of the Indictment, Attempting to possess with Intent to Deliver Methamphetamine. Pursuant to Paragraph 17 of the plea agreement, the government agrees to recommend a base offense level of 24. The Defendant joins in this recommendation.

     In addition, based on the sentencing factors found in 18 U.S.C. § 3553(a) a sentencing below the guideline range is sufficient but not greater than necessary to meet the purposes of sentencing, including just punishment. This memorandum addresses some of the reasons why.

     A criminal defendant as a "due process right to be sentenced on the basis of accurate information." *United States v Bozovich*, 782 F.3d 814, 817 (7th Cir. 2015); *Beb-Yisrayl v.. Buss*, 540 F.3d 542, 554 (7th Cir. 2008). Sentencing determinations must be based on reliable evidence, but courts may make reasonable though imprecise estimates based on the information that has indicia of reliability. *Bozovich*, 782 F.3d at 817-18. Furthermore, a preponderance of the evidence is required for a factual finding under the USSG. *Id* at 818. Moreover, when deciding such an issue the Court should "err on the side of caution," *United States v. Beler*, 20

F.3d 1428, 1436 (7th Cir. 1994), quoting United States v. Walton, 908 F.2d 1289, 1302 (6th Cir. 1990).

**Other Sentencing Considerations**

"[T]he sentencing judge, being forbidden to presume the reasonableness of a guideline sentence, must make an independent determination of whether a guideline sentence would comport with the sentencing standard set forth in 18 U.S.C. § 3553(a)." *Hawkins v. United States*, 706 F.3d 820, 823 (7th Cir. 2013) *opinion supplemented on denial of reh'g*, 724 F.3d 915 (7th Cir. 2013). In fact, the sentencing judge may not at all impose a sentence within guideline range if the guideline sentence would be inconsistent with the § 3553(a) factors. *Id.* "[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a *rough approximation* of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109, 128 S. Ct. 558, 574 (2007) (emphasis added) (quoting *Rita* 551 U.S. at 350). A district court "must sentence based on 18 U.S.C. § 3553(a) *without any thumb on the scale* favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007) (emphasis added).

Under § 3553(a), a court "shall impose a sentence sufficient, but not greater than necessary" to comply with the following purposes of sentencing:

> (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (b) to afford adequate deterrence to criminal conduct;
>
> (c) to protect the public from further crimes of the defendant; and
>
> (d) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

In determining the particular sentence to be imposed, a court also must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the

need for the sentence imposed to reflect paragraphs (a) through (d) above; (3) the kinds of sentences available; (4) the types of sentences and sentencing range established by the sentencing guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**Nature and Circumstances of the Offense**

Mr. Talamanco has had addiction issues going back to his adolescence. From the age of 14 until approximately age 31, Mr. Talamanco was an avid marijuana user. During that time, he abused other controlled substances (cocaine, heroin, crack cocaine, LSD, ecstasy, and prescription opiates) but Marijuana was his drug of choice.

Beginning in September of 2018, Mr. Talamanco became interested in bitcoin as an investment. Through research of Bitcoin, he learned of the "Dark Web" As he entered the Dark Web, he was amazed at the thought of purchasing illegal items on the internet. He 'put his toes in the water' by purchasing drug paraphernalia. Later, he began ordering small quantities of cocaine and marijuana. He purchased larger quantities of marijuana and also began to purchase small quantities of methamphetamine. He also purchased counterfeit currency.

At the time of his arrest, Talamanco was actively distributing marijuana, but not actively distributing Methamphetamine. The marijuana he was selling was limited to several friends. Mr. Talamanco owned his own successful business and sales of marijuana was not a daily activity. Mr. Talamanco admitted he had a 1gram of methamphetamine a day habit.

While the law does not require the Government prove a certain amount of the methamphetamine seized was going to be distributed, the evidence seems to indicate most of the methamphetamine purchased by Mr. Talamanco was intended for his own consumption. Cell

phone records indicate Mr. Talamanco shared a small amount of Methamphetamine with a friend in December of 2018 and made a comment about having the ability to get larger amounts of the drug.

Mr. Talamanco did not have a plan to distribute large amounts of Methamphetamine. Rather, when trying to purchase Meth on the Dark Web, he was able to purchase the ¼ lb for $800.00. He was amazed at the cost. Initially, he thought he could sell some the methamphetamine to supplement the cost of his habit. Shortly after he made the purchase, he realized he did not really have anyone to sell it to. He did not want it to be known that he had a methamphetamine addiction. The phone records seem to corroborate Mr. Talamanco did not have a sophisticated plan in place to distribute quantities of methamphetamine. Other than one minor transaction and a comment about having the ability to obtain more, there was no list of Methamphetamine users or text messages regarding the distribution of methamphetamine on his cell phone. Mr. Talamanco did acknowledge that had he been arrested six to twelve months later, he may have had some structure in place to distribute methamphetamine.

**Defendant's History and Characteristics**

Mr. Talamanco is 38 years of age. Despite his parents divorcing at a young age, he was raised in a supportive and loving environment. He was struggled with ADHD and as a result, did not do well in a structured learning environment. He associated with individuals who had a negative influence on him and introduced him to drugs. By his late teens, he had developed a heroin addiction. This addiction continued until he overdosed and a friend died from an overdose. As a result of these drastic consequences, he was motivated to get sober and he was able to overcome his heroin addiction.

Approximately 9 years ago, Mr. Talamanco began to self-medicate by taking prescription amphetamines. The cost and difficulty obtaining the prescriptions persuaded Mr. Talamanco to use Methamphetamines to self-medicate.

Mr. Talamanco did not suffer the 'typical' pitfalls that commonly afflict those that abuse methamphetamine. He did not have tooth decay, extreme weight loss, sores, or infections. He did not suffer from delusions or have any negative mental health effects. Family and friends had no idea he was abusing methamphetamines during this time. He did benefit from the use of the drug with increased focus, motivation and mood. (During World War II, soldiers were provided methamphetamines to increase alertness and energy. See Rasmussen N (2011). "Medical science and the military: the Allies' use of amphetamine during World War II". J. Interdiscip. Hist. 42 (2): 205–233.)

Because he has not had any significant side effects of the methamphetamine use, Mr. Talamanco did not see the need to stop using. While being incarcerated, he has seen the affect methamphetamine use has on many people. He was surprised how prevalent methamphetamine use is in Brown County and how it has destroyed many lives. He feels motivated to stop his use of methamphetamine just as he was when he decided to stop using heroin.

While the Defendant has had some criminal involvement, it occurred when he was very young and all incidents were either drug-related or involved the consumption of alcohol.

Family and friends describe Mr. Talamanco as honest, kind, compassionate and giving. Food that was purchased by his family for his comfort in the jail he has given to other inmates that do not have support from family.

Mr. Talamanco has a strong work ethic and is motivated for success. He is a goal-oriented person. The period of imprisonment he has endured has had a significant impact on him. It has given him an opportunity to see what his future looks like if he continues to use methamphetamine.

**Conclusion**

Mr. Talamanco has a history of addictions. He has dealt with drug addiction since his teenage years. He has also struggled with a gambling addiction. Despite this, he has demonstrated the ability to overcome a heroin addiction as a young adult after suffering a significant consequence of his use.

Mr. Talamanco has now suffered a significant consequence from his use of methamphetamine. It has had a significant impact on his freedom, his financial future and the relationship he has with his wife and family. He is motivated to build a new future for himself and his wife.

Considering all of the circumstances of this case, respectfully, we believe the 12 months incarceration is sufficient, but not more than necessary punishment for this offense

Dated this 24th day of July, 2019.

Brabazon Law Office, LLC.

_s/Shane Laughton Brabazon_
Shane Laughton Brabazon
State Bar No. 1025598

Brabazon Law Office, LLC
P.O. Box 11213
Green Bay, WI 54307-1213
920-494-1106